UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHERRL N., | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|       v. | )  1:19-cv-00274-JDL |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
|   Defendant. | ) |

**ORDER ON ITEMIZED STATEMENT OF ERRORS AND MOTION FOR SENTENCE SIX REMAND**

Cherrl N. appeals the Social Security Administration Commissioner's final decision determining that she is not disabled and denying her application for disability insurance benefits (ECF Nos. 11 at 1; 17 at 1). Cherrl N. initially filed an itemized statement of errors pursuant to Local Rule 16.3(a)(2)(A) seeking judicial review by this Court under sentence four of 42 U.S.C.A. § 405(g) (West 2020), and arguing that the Administrative Law Judge ("ALJ") should have ordered a neuropsychological evaluation before concluding that Cherrl N. was not disabled. ECF No. 11 at 2-4. She asks that the Commissioner's decision be vacated and remanded for a rehearing.[1] *Id.* at 7. Before this Court could rule on her statement of errors, Cherrl N. filed a motion for remand under sentence six of 42 U.S.C.A. §

---

[1] While Cherrl N.'s statement of errors does not specify that she sought review pursuant to sentence four of 42 U.S.C.A § 405(g), sentence four and sentence six of § 405(g) are the exclusive means by which a district court can order a remand to the Commissioner. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993). Because Cherrl N. initially argued that the ALJ based his decision on an inadequately developed record—which, as discussed *infra*, falls squarely within the realm of sentence four—I construe Cherrl N.'s statement of errors as seeking remand only under sentence four. This interpretation is supported by the fact that Cherrl N.'s motion filed on March 16, 2020 specified that it was for remand under sentence six, indicating that the earlier motion was for a sentence four remand.

405(g), arguing that this Court should order additional evidence be taken, because Cherrl N. presented new evidence in the form of a neuropsychological evaluation report. ECF No. 17 at 1.  For the following reasons, I deny both the statement of errors and the motion, and I affirm the Commissioner's decision.

## I. BACKGROUND

Cherrl N. alleges that she became disabled on March 29, 2016, when she suffered her second heart attack and subsequently had three stents placed in her heart. Cherrl N. filed a claim for Disability Insurance benefits on May 17, 2016, claiming that she could no longer continue her work as an accounting clerk.  Her claim was denied both initially and again upon reconsideration.  Cherrl N. then requested a hearing, which took place before the ALJ on August 28, 2018.

On September 24, 2018, the ALJ issued Cherrl N. an unfavorable decision.  At the outset of his decision, the ALJ noted Cherrl N.'s request for a post-hearing neuropsychological consultative examination to assess her alleged cognitive impairment.  The ALJ denied this request, noting that the record failed to document any longstanding problems with cognitive decline following Cherrl N.'s second heart attack, and that the vast majority of records showed intact attention and concentration.

The ALJ next applied the established five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a).  He first made the threshold determination that Cherrl N. meets the insured status requirements of the Social Security Act through December 31, 2020. At Step 1, he found that Cherrl N. had not engaged in substantial gainful employment activity

since March 29, 2016, the alleged onset date of Cherrl N.'s disability. At Step 2, he found that Cherrl N. had a severe impairment: coronary artery disease post-stent. He also found that Cherrl N.'s other conditions—gastrointestinal reflux disease, diabetes mellitus, obesity, and affective disorder—are non-severe conditions. He found that Cherrl N. had only mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Finally, and crucially, the ALJ found that Cherrl N.'s alleged cognitive disorder was not medically determinable.

In reaching his decision that Cherrl N.'s alleged cognitive disorder was not medically determinable, the ALJ noted that Cherrl N. had never been diagnosed with such a disorder. He specifically found that Cherrl N. presented with adequate memory, available sustained concentration, average intelligence, normal fund of information, and intact insight and judgment in a psychological consultative examination performed in September of 2016, despite her claim that she has been unable to focus well since her heart attack in March of 2016. He further noted that Cherrl N.'s attention span and concentration were normal in treatment sessions that took place in October and November of 2016, and that she was deemed to have "unimpaired" cognitive function in May of 2017. The ALJ focused on the fact that Cherrl N. first raised the issue of poor concentration in June of 2018, when her lawyer sent paperwork for her primary care physician to fill out. The primary care physician offered to refer Cherrl N. for mental health treatment, which she declined. The ALJ found the fact that Cherrl N. had declined a referral from her own doctor to be

persuasive evidence that further investigation of Cherrl N.'s alleged cognitive disorder was unnecessary.

At Step 3, the ALJ found that Cherrl N. does not have an impairment that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before moving on to Steps 4 and 5, an ALJ is required to make a determination of the claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). Here, the ALJ determined that Cherrl N. has the residual functional capacity to perform light work, except that she can occasionally climb, balance, stoop, kneel, crouch, and crawl. Next, at Step 4, the ALJ found that Cherrl N. is capable of performing her past relevant work as an accounting clerk. He therefore concluded that Cherrl N. was not disabled from March 29, 2016 through September 24, 2018, the date of the decision.

Cherrl N. made a timely request to the Appeals Council, which resulted in a denial dated May 3, 2019. Accordingly, the parties agree that Cherrl N. has exhausted her administrative remedies. Cherrl N. has presented two relevant requests to this Court. First, she argues that the ALJ did not satisfy his obligation to fully develop the record because he did not order cognitive testing despite requests from counsel before, during, and after Cherrl N.'s hearing. ECF No. 11 at 1. Second, Cherrl N. now presents a neuropsychological evaluation report that she obtained after the ALJ's decision, arguing that it is new and material evidence that demands a remand to the Commissioner. ECF No. 17 at 1, 3.

## II. LEGAL ANALYSIS

"In cases reviewing final agency decisions on Social Security benefits, the exclusive methods by which district courts may remand to the [Commissioner] are set forth in sentence four and sentence six of [42 U.S.C.A.] § 405(g) . . . ." *Shalala*, 509 U.S. at 296 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991)). Sentence four of § 405(g) states that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A remand under sentence four requires the district court to determine "whether the final [administrative] decision is supported by substantial evidence and whether the correct legal standard was used." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). A sentence six remand may be ordered, as relevant here, "where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala*, 509 U.S. at 297 n.2; *see also* § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

While a remand under sentence four requires a court to rule on the merits of the case, under sentence six, a district court "does not rule in any way as to the correctness of the administrative determination." *Melkonyan*, 501 U.S. at 98 (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Accordingly, I first address whether a remand under sentence six is appropriate.

A.      **Remand Under Sentence Six**

   **1. Newness/Materiality**

Evidence is new if it "was not available to the claimant at the time of the administrative proceeding," *Melkonyan*, 501 U.S. at 98, and material if the Commissioner's decision "might reasonably have been different," *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 140 (1st Cir. 1987) (quoting *Falu v. Sec'y of Health & Human Servs.,* 703 F.2d 24, 27 (1st Cir. 1983)). "The mere existence of evidence in addition to that submitted before the [ALJ] will not constitute sufficient cause for remand." *Id.* at 139.

Here, the evidence presented by Cherrl N. is undoubtedly new. The ALJ's decision was rendered on September 24, 2018, and Cherrl N. did not obtain the neuropsychological evaluation until November 23, 2019.

Moreover, the neuropsychological evaluation report is neither cumulative nor irrelevant, and it might reasonably have made a difference in the ALJ's decision. In making his decision, the ALJ "afford[ed] great weight" to the opinions of State agency medical consultants Dr. Leigh Haskell and Dr. Peter Allen, as well as the consultative examination of Dr. Jonathan Freedman.  ECF No. 9-2 at 18.

Dr. Freedman, the only one of the three cited examiners to physically examine Cherrl N., opined that:

> Speech was normal for rate, volume, and syntax. Behavior was appropriate: [Cherrl N.] smiled and made eye contact. Thought processes were logical and rational. Thought content was relevant to questions asked. Perceptual abnormalities were denied. Grandiosity, persecutory ideas, or obsessive tendencies not noted. Mood was genial and affect positive.

> Orientation was positive in all 4 domains. Memory processes were adequate. Sustained concentration was found to be available. Fund of information was adequate for work. Intelligence was estimated to be average to better. Judgment was intact. Insight was available. She was able to complete a 4-step direction. Serial 7s were completed quickly and accurately. She could recall the names of the last 4 presidents.
>
> Impulse control was noted to be adequate. Capacity to engage in an abstract discussion was present. Thoughts of violence or self-harm were denied.

ECF No. 9-7 at 76.

Dr. Freedman did note that while Cherrl N.'s capacity to work appeared adequate from a psychological perspective, it could "perhaps [be] compromised by medical issues beyond the scope of this report." *Id.* at 77. In finding that Cherrl N. did not have any significant work-related limitations, Dr. Freedman focused on Cherrl N.'s capacity to do such things as: follow work rules, function independently, use her judgment, maintain her personal appearance, behave in an emotionally stable manner, engage in appropriate social interactions, concentrate, and follow instructions. *Id.* at 77-78.

Dr. Haskell reviewed Dr. Freedman's examination and concluded that Cherrl N. had "no mental limitations." ECF No. 9-3 at 7. Dr. Allen also reviewed Dr. Freedman's examination and opined that Cherrl N. may have an adjustment disorder, but that her "[m]ental impairment does not appear to be severe." *Id.* at 21.

In denying Cherrl N.'s request for a neuropsychological examination, the ALJ also cited to medical records of Cherrl N.'s various medical office visits, which noted, for example, that Cherrl N. was "alert and oriented; thought content appears normal, affect appears normal, and maintains good eye contact." ECF No. 9-2 at 15; ECF No.

7

9-7 at 191. The Commissioner also notes that Dr. Fridman, a physician who performed a consultative examination, opined that "[c]laimant was alert and had good eye contact and fluent speech. Mood was appropriate and had clear thought processes. Claimant's memory was normal and concentration was good. The claimant was oriented to time, place, person, and situation." ECF No. 9-7 at 82; ECF No. 12 at 3.

The medical records and reports relied on by the ALJ portrayed the broad contours of Cherrl N.'s mental health. However, the neuropsychological evaluation report proffered by Cherrl N., which appears to be based on an extensive series of cognitive tests that were not performed by any of the medical professionals upon whose opinions the ALJ relied, reveals potential cognitive issues that exist at a deeper level.[2] The neuropsychologist, Dr. Anthony Podraza, reported that Cherrl N.:

> . . . is currently performing in the borderline to low average range of intellectual ability, which is significantly worse (-15 IQ points) than expected given her average premorbid estimate of general intellectual ability and her occupational background. In addition, her severely impaired performance on an arithmetic test was well below expectations given her occupational history. Her pattern of deficit on measures of reasoning, attention/concentration, visuospatial construction, sentence repetition, fine motors speed, cognitive inhibition and switching, and perceptual motor speed is suggestive of bilateral frontal lobe dysfunction. These findings are worse than expected given her current psychological status and is likely in large part [due] to her history of hypoxia/anoxia secondary to her myocardial infarctions.

---

[2] These tests included: "the TOMM; Wechsler Abbreviated Scale of Intelligence-2nd Edition, WRAT-4 Arithmetic subtest; Wisconsin Card Sorting Test; FAS Verbal Fluency Test; Symbol-Digit Modalities Test; the Logical Memory I and II subtest from the Wechsler Memory Scale-4th Edition; California Verbal Learning Test-2nd Edition; Integrated Visual and Auditory Continuous Performance Test-2nd Edition; DKEFS Color-Word Tests; Digit Span Test; Judgment of Line Orientation Test; Facial Recognition Test; Trail Marking Test Parts A and B; MAE Token Test; Grooved Pegboard Test; Strength of Grip Test; Beck Depression Inventory-2nd Edition; Beck Anxiety Inventory; and the Millon Clinical Multiaxial Inventory-4th Edition." ECF No. 17-1 at 3.

ECF No. 17-1 at 6-7. He further noted that Cherrl N.'s March 29, 2016 heart attack appeared to be "largely responsible for the neurocognitive difficulties she is currently experiencing." ECF No. 17-1 at 7.

At the hearing before the ALJ, a neutral vocational expert agreed that if Cherrl N. was limited to unskilled work, she could not perform her skilled position as an accounting clerk. Because a cognitive impairment would likely limit Cherrl N. to unskilled work, the issue of whether or not Cherrl N.'s cognitive functioning is impaired is material to the ALJ's ability to make a proper determination of Cherrl N.'s disability status. The neuropsychological evaluation report indicates that Cherrl N. may have a cognitive impairment, which is based on a new and different battery of tests than the psychological evaluation that the ALJ relied on, and it speaks to the ultimate issue of whether Cherrl N. can continue her work as an accounting clerk. Accordingly, this evidence meets the newness/materiality requirement.

**2. Good Cause**

A claimant must present good cause to justify her failure to present her new and material evidence to the ALJ. *See Evangelista*, 826 F.2d at 141. "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided—to the end that the process not bog down and unduly impede the timely resolution of social security appeals." *Id*.

Cherrl N. primarily argues that the ALJ failed to properly develop the record by declining her numerous requests for a neuropsychological evaluation, and that this constitutes good cause for the unavailability of the neuropsychological evaluation report at the time of the hearing. I decline to reach this issue in the context of Cherrl

9

N.'s sentence six motion, because the propriety of the ALJ's decision falls squarely within the bounds of sentence four, which I address separately below.

Cherrl N. also argues that at the time that her case came before the ALJ she had no resources to obtain neuropsychological testing, as she was without medical insurance. Additionally, in his requests at the administrative level for a neuropsychological evaluation, Cherrl N.'s counsel stated that he was unable to obtain a neuropsychological evaluator in the Bangor, Maine area where Cherrl N. lives.

Cherrl N. has not, however, offered any explanation as to how she has now managed to obtain testing from a board-certified neuropsychologist in the Bangor, Maine area. This is where her motion fails. Allowing a petitioner to present new evidence following an unfavorable administrative decision without any credible explanation as to why she did not obtain that evidence sooner rather than later would lead to the exact "yo-yo effect" that Congress sought to avoid. The petitioner would have an incentive to forgo crucial medical evaluations in the hopes that the ALJ would order the evidence at the government's expense, and with the knowledge that, should the ALJ not order the evidence, the case could be reopened on a sentence six remand. *See Evangelista*, 826 F.2d at 141; *see also Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008) ("Because [claimant] does not provide an explanation for failing to obtain the information before the record closed, he has not established good cause for not incorporating the evidence into the record in the prior proceedings."); *Watts v. Harris*, 614 F.2d 515, 516 (5th Cir. 1980) (per curiam) ("[I]n this case, [the claimant] has offered no explanation as to why the information was not gathered at the proper

time."); *Brown v. Schweiker*, 557 F. Supp. 190, 193 (M.D. Fla. 1983) ("Claimants should not be able to get a new hearing after an adverse decision by the [Commissioner] just by withholding certain reports, then asking for a remand on 'new evidence' grounds.").

Typical examples of good cause to remand include practical difficulties such as unintelligible transcripts of testimony presented at hearings, *see Bianchi v. Sec'y of Health & Human Servs.*, 764 F.2d 44, 46 (1st Cir. 1985) (per curiam), or inaudible hearing recordings, *see Carr v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00153-NT, 2011 WL 6002928, at *1 (D. Me. Nov. 30, 2011). The Conference Agreement undergirding the Social Security Disability Amendments of 1980, Pub. L. No. 96-265, § 307, which amended § 405(g), notes that "[w]here, for example, the tape recording of claimant's oral hearing is lost or inaudible, or cannot otherwise be transcribed . . . good cause would exist to remand the claim . . . ." *Evangelista*, 826 F.2d at 141 (quoting H.R. Rep. No. 96-944, at 59 (Conf. Rep.), *reprinted in* 1980 U.S.C.C.A.N. 1277, 1980 WL 13107). While motions for remand under sentence six are not solely limited to these evidence-preservation issues, *see, e.g.*, *Freeman v. Barnhart*, 274 F.3d 606, 610 (1st Cir. 2001) (granting remand under sentence six where the Commissioner obtained new information that the claimant was working during the application period that was not previously available), they are not designed to allow the type of back-and-forth that Cherrl N. seeks in her motion. Accordingly, Cherrl N.'s motion for remand under sentence six of § 405(g) is denied.

## B. Remand Under Sentence Four

As noted above, remand under sentence four requires the district court to determine "whether the final [administrative] decision is supported by substantial evidence and whether the correct legal standard was used." *Seavey*, 276 F.3d at 9. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)).[3]

A court reviewing the record for substantial evidence is "to keep in mind that 'issues of credibility and the drawing of permissible inference from evidentiary fact are the prime responsibility of the [Commissioner].'" *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (alterations omitted) (quoting *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965)). "[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts." *Id.*

---

[3] Cherrl N. frames the issue as whether the ALJ satisfied his obligation to develop the record. ECF No. 11 at 3. However, as Cherrl N. agrees, *see* ECF No. 11 at 3, "the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision." *Walsh v. Colvin*, C.A. No. 15-4955, 2016 WL 8674490, at *3 (D.R.I. Aug. 19, 2016) (rec. dec., *aff'd* Jan. 9, 2017). Because additional evidence is not required if the ALJ has substantial evidence on which to base his decision, the proper inquiry is whether the ALJ's decision is supported by substantial evidence. *Cf. Carrillo Marin v. Sec'y of Health & Human Servs.*, 758 F.2d 14, 16-17 (1st Cir. 1985) (per curiam) (concluding that ALJ's opinion was not based on any substantial evidence because he disregarded uncontroverted medical opinions and instead based decision on his own impression of claimant's health, and noting that the proper course where an ALJ doubts the severity of a claimant's disorder but lack substantial evidence on which to base his doubt is to request a consultative examination).

Here, the ALJ's decision was supported by substantial evidence. As noted above, the ALJ relied on the opinions of multiple medical professionals that specifically addressed Cherrl N.'s mental capacity in order to reach his conclusion regarding her cognitive functioning. Furthermore, the ALJ relied on the notes of Cherrl N.'s treating physicians, who did not flag any issues with Cherrl N.'s cognitive limitations. The ALJ also gave particular weight to the fact that Cherrl N. first raised the issue of poor concentration after obtaining counsel, and that she declined a referral for mental health treatment from her own doctor.

The First Circuit faced an analogous issue in *Irlanda Ortiz v. Secretary of Health & Human Services*, which involved a claimant who had received minimal treatment for what he claimed was unrelenting pain. 955 F.2d 765, 769 (1st Cir. 1991). The Court noted that it viewed "gaps in the [claimant's] medical record as 'evidence,'" and it recognized the Commissioner's "inference that [the] claimant would have secured more treatment had his pain been as intense as alleged," as valid, noting that "the resolution of conflicts in the evidence and the drawing of conclusions from such evidence are for the Commissioner." *Id.*

The reasoning in *Irlanda Ortiz* applies equally here. The ALJ reasonably inferred that Cherrl N. would have raised the issue of her alleged cognitive disorder with medical providers more forcefully if it was as debilitating as she alleged. In addition, he reasonably relied on the opinions of treating physicians and consultants who did not note any significant cognitive issues. As Magistrate Judge Cohen noted in *Austin v. Barnhart*, remanding in this circumstance:

> [W]ould be the equivalent of requiring such an [additional] examination whenever the [C]ommissioner finds that there is insufficient medical evidence to support the degree of pain or other limitations reported by the claimant. Such a request would apply to the majority of claims that have reached this court over the years. It is simply too broad.

No. 03-156-B-W, 2004 WL 1896999, at *2 (D. Me. Aug. 25, 2004) (rec. dec., *aff'd* Sept. 20, 2004). Because the ALJ's decision was supported by substantial evidence and the correct legal standard was used, Cherrl N. is not entitled to a remand under sentence four.

### III. CONCLUSION

For the above reasons, Cherrl N.'s itemized statement of errors (ECF No. 11) and motion to remand under sentence six of 42 U.S.C.A. § 405(g) (ECF No. 17) are **DENIED** and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED.**

Dated: October 19, 2020

                                                                     /s/ Jon D. Levy
                                                 **CHIEF U.S. DISTRICT JUDGE**